UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 07-CR-0442 (PJS) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| JON WENDELL GREEN, | |
| Defendant. | |

Ann M. Anaya, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Tina H. Appleby, HALBERG CRIMINAL DEFENSE, for defendant.

On January 8, 2008, defendant Jon W. Green pleaded guilty to one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2).  The Court held a sentencing hearing on April 10, 2008, at which the government attempted to prove, for sentencing purposes, that Green sexually abused four girls in his neighborhood.  The Court found that the government had proven, by a preponderance of the evidence, that Green had sexually abused one of the girls, but had failed to prove, by a preponderance of the evidence, that Green had sexually abused the other three girls.  The Court now writes to explain the basis for its findings and to request briefing on the question of how Green's recommended sentence under the United States Sentencing Guidelines ("U.S.S.G.") should be calculated in light of the Court's findings.[1]

---

[1]At the sentencing hearing, after the government rested its case and the Court ruled on the disputed factual issues, the government orally moved to reopen the hearing so that it could submit additional evidence.  The government subsequently withdrew that motion.  Docket No. 15.

(continued...)

-1-

The parties agree that, under the sentencing guidelines, Green's criminal-history category is I, with zero points. (Except for two old drunk-driving convictions, Green has no criminal record.) But the parties disagree about Green's offense level.

The revised presentence investigation report ("PSR") calculates Green's offense level as 37. This calculation is premised on the assumption that, in addition to possessing child pornography, Green sexually abused four girls in his neighborhood: CRD, DAB-D, DMF, and CJF.[2] The abuse allegedly occurred in the summer of 2007, not long before Green's arrest on August 3, 2007. All four girls were about six years old at the time of the alleged abuse.

None of the child pornography found in Green's possession (and which forms the basis of the charge to which he pleaded guilty) had any connection to the four girls. But Green did have in his possession two partially naked photographs, one of CRD and one of DAB-D, which

---

[1](...continued)
Although the issue is now moot, the Court notes that, as a general rule, parties who fail to make their case are not given a second chance to do so, and that this general rule applies to sentencing proceedings. *See United States v. Dickler*, 64 F.3d 818, 832 (3d Cir. 1995) ("[W]here the government has the burden of production and persuasion as it does on [sentencing-related] issues . . . , its case should stand or fall on the record it makes the first time around."); *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995); *United States v. Parker*, 30 F.3d 542, 554 (4th Cir. 1994) ("One bite at the apple is enough."). *But see United States v. Matthews*, 278 F.3d 880, 885-86 (9th Cir. 2002) (adopting general rule that, after a remand for resentencing, a district court may hear new evidence, but declining to overrule cases in which a district court was directed not to hear new evidence on remand "where there was a failure of proof after a full inquiry into the factual question at issue"). Of course, a district court has *discretion* to reopen a sentencing hearing at the government's request, but the government must explain why it was unable to make its case the first time around. *See United States v. Wipf*, Crim. No. 03-111, 2003 U.S. DIST. LEXIS 17467, at *14-15, 2003 WL 22283380, at *5 (D. Minn. Sept. 25, 2003).

[2]At the sentencing hearing, the girls were referred to by only two initials: CRD was called "CD" and (mistakenly) "CE"; DAB-D was called "DB"; DMF was called "MF"; and CJF was called "CF." The Court uses the initials that were used in the PSR.

prominently displayed each girl's genitalia.  The PSR found, and the government does not

contest, that Green's possession of these two photographs was lawful because they did not depict

a minor engaging in sexually explicit conduct.  PSR ¶ 27.

Green's base offense level is 22 under U.S.S.G. § 2G2.2(a)(2).  U.S. Sentencing

Guidelines Manual § 2G2.2(a)(2) (2007).[3]  Under § 2G2.2(b)(1), Green's offense level should be

decreased by two levels if his "conduct was limited to the receipt or solicitation of material

involving the sexual exploitation of a minor" and if he "did not intend to traffic in, or distribute,

such material . . . ."  The parties agree that there is no evidence that Green ever distributed (or

intended to distribute) child pornography.  The PSR found, though, that Green was not eligible

for the two-level decrease under § 2G2.2(b)(1) because he sexually abused the four

neighborhood girls and took partially naked pictures of two of them — and thus his "conduct"

was *not* "limited to the receipt or solicitation of [child pornography]."  PSR ¶ 20; PSR Rev.

Addendum ¶ 2 ("[T]he defendant produced images of child erotica which . . . included 2

prepubscent females.  These 2 children, along with two additional prepubescent children,

reported that the defendant had touched their genitals.  Based on this information, it does not

appear the defendant is eligible for a 2-level reduction at § 2G2.2(b)(1).").

The PSR also determined that Green's offense level should be increased by five levels

under § 2G2.2(b)(5), which applies if Green "engaged in a pattern of activity involving the

sexual abuse or exploitation of a minor . . . ."  PSR ¶ 24.  The application notes to this guidelines

---

[3]Unless otherwise indicated, all section references are to sections of the United States
Sentencing Guidelines Manual effective November 1, 2007.

section define "pattern of activity involving the sexual abuse or exploitation of a minor" to

mean:

> any combination of two or more separate instances of the sexual
> abuse or sexual exploitation of a minor by the defendant, whether
> or not the abuse or exploitation (A) occurred during the course of
> the offense; (B) involved the same minor; or (C) resulted in a
> conviction for such conduct.

U.S. Sentencing Guidelines Manual § 2G2.2, cmt. n.1 (2007).  The PSR found that Green's

abuse of the neighborhood girls constituted "two or more separate instances of the sexual

abuse . . . of a minor," and that Green was therefore subject to a five-level increase under

§ 2G2.2(b)(5).  PSR ¶ 24.

Green admits that he possessed child pornography — and Green admits that he took one

partially naked photograph of CRD and another of DAB-D — but he adamantly denies that he

sexually abused any of the girls.  The government therefore moved for a sentencing hearing, at

which it could introduce evidence of Green's conduct toward the four girls.  Mot. Sentencing

Hr'g [Docket No. 10].  The Court granted the motion, and the hearing was held on April 10.

A great deal was at stake at the hearing.  If the Court found, by a preponderance of the

evidence, that Green abused the four girls — and if the Court agreed with the PSR about the

impact of those findings on the sentencing-guideline calculations — then Green would face a

guidelines recommendation of 210 to 240 months in prison.[4]  Given that Green is almost 70

years old and not in good health, a sentence within or even near the guidelines range would, as a

practical matter, be a life sentence.

---

[4]The guidelines range for an offense level of 37 and a criminal-history category of I is
actually 210 to 262 months, but Green's maximum sentence under 18 U.S.C. § 2252(a)(2) is 20
years (i.e., 240 months).

By contrast, if the Court did not find, by a preponderance of the evidence, that Green abused the four girls, then Green would definitely *not* receive the five-level enhancement under § 2G2.2(b)(5), and Green probably *would* receive the two-level reduction under § 2G2.2(b)(1). With a resulting offense level of 30, Green would be facing a recommended sentence under the guidelines of 97 to 121 months.  In sum, a finding that Green abused the four girls could add roughly ten to twelve years to his sentence (assuming that the Court was inclined to follow the sentencing-guidelines recommendation).

Despite the high stakes, the government took a lackadaisical approach to establishing that Green abused the four girls.  At the hearing, the government called only one witness, and questioned him for only about ten minutes.  The government did not introduce a single exhibit. Nor did the government, before the hearing, submit any evidence to the Court — not a single police report, or affidavit from a witness, or interview transcript, or videotape of an interview (despite the fact that such videotapes apparently exist).

The government's lone witness was Deputy Joe Schneider from the Wabasha County Sheriff's Department.  Deputy Schneider testified that, on August 2, 2007, CRD called her mother into the bathroom because her genitals were sore and swollen.  In answer to questions from her mother, CRD reported that Green had rubbed her genitals on one occasion while she was sitting on his lap watching the fish in his pond.  That night, CRD's mother contacted the Plainview, Minnesota, police department.  The following day, a social worker trained in interviewing young children about sexual-abuse allegations conducted a "corner-house"

interview of CRD.[5]  While the social worker interviewed CRD, Deputy Schneider watched the interview on a video monitor in a separate room.

CRD told the social worker the same thing that she had told her mother:  Green had rubbed her genitals while she sat on his lap watching the fish in his pond.  Based on CRD's statement — and on evidence that a neighbor of Green's saw inappropriate (although not pornographic) photographs of neighborhood children on his digital camera — police searched Green's home on August 3, 2007.  A large quantity of child pornography was found, and Green was arrested.  That child pornography is the basis for the violation of 18 U.S.C. § 2252(a)(2) to which Green pleaded guilty.  The two partially naked pictures of CRD and DAB-D discussed above were found on a digital camera seized during the search.

Over the next couple of days, the police contacted the parents of DAB-D, DMF, and CJF, neighborhood girls who (like CRD) were known to have spent time at the Green home.  Deputy Schneider was not clear about what the children's parents were told — but, at a minimum, it is likely that they were told that police had reason to believe that Green may have sexually abused their daughters.  Police arranged corner-house interviews of the three girls.  DAB-D and DMF were each interviewed on August 6, and CJF was interviewed over two days, August 7 and 8.  (Deputy Schneider did not say why CJF was interviewed twice.)  According to Deputy Schneider, in those interviews, each of the three girls reported that Green had rubbed her genitals more than once while she was at his house.

_____

[5]A "corner-house" interview is conducted in a room designed to look like a small living room in a typical house.  The social worker is alone with the child in the room.  A camera feeds a video signal of the interview to a nearby room, where the police watch the interview on a television monitor.  The social worker may take breaks in order to consult with the police outside of the presence of the child.

But Deputy Schneider had almost no first-hand information about any of this.  He

witnessed only one corner-house interview (of CRD).  He did not interview the other three girls

or witness their corner-house interviews.  Indeed, it is not clear whether he ever talked to any of

the girls or any of their parents.

Deputy Schneider's hearing testimony was based almost entirely his in-court review of a

stack of documents — presumably police reports and interview summaries — written by other

police officers (and perhaps by social workers).  When asked various questions by the

government or the Court (the defense did not ask any questions), Deputy Schneider would flip

through the documents until he found an answer.  The government did not provide these

documents to the Court, and Deputy Schneider did not identify the authors of the documents or

the sources of their assertions, other than to say (in response to a question from the Court) that

the documents were prepared by his colleagues in the ordinary course of business.

When a case turns almost entirely on witness testimony rather than physical evidence, the

credibility of that testimony is the most important issue for the factfinder.  And when a case turns

on the testimony of a very young child, the central issue is whether the child's testimony is not

just truthful from the child's perspective, but also *reliable*.  It is critically important that

everyone who discusses the case with the child or questions the child about the case take great

care not to influence, even unintentionally, the child's account of events.  Yet despite the

surpassing importance of the reliability of the children's testimony in this case, the government

gave the Court next to no basis for assessing that reliability.

In particular, the government offered virtually no evidence about what the police told the

parents of DAB-D, DMF, and CJF, or about what their parents (or anyone else) told these three

girls before their corner-house interviews.  Under questioning from the Court, though, Deputy

Schneider testified that he thought that at least two of the girls — DMF and CJF — knew

something about the allegations against Green before they were interviewed.  Deputy Schneider

had no idea about what DAB-D knew before her interview.

After Deputy Schneider testified, the government rested.  Green introduced no evidence,

save his denial — made through his attorney — that he sexually abused any of the girls.  Thus,

the question for the Court was whether Deputy Schneider's testimony established, by a

preponderance of the evidence, that Green had abused the four girls.

The Court found at the hearing that Green had indeed abused CRD.  According to the

evidence, CRD, without any prompting, initiated a conversation about Green when she

complained to her mother that her genitals were sore.  CRD reported her sexual abuse before

anyone told her that Green was suspected of any misconduct.  CRD's mother contacted police;

the police did not reach out to CRD's family.  CRD was interviewed by a social worker trained

to question young children about allegations of sexual abuse — and, during the course of that

interview (which Deputy Schneider witnessed), CRD gave information consistent with what she

had earlier told her mother.  Finally, a partially naked photograph of CRD was found in Green's

camera.  Taken as a whole, this evidence established that it was more likely than not that Green

sexually abused CRD on one occasion.

The Court also found, however, that the government had failed to carry its burden of

proving that it was more likely than not that DAB-D, DMF, and CJF had been sexually abused.[6]

---

[6]It should be stressed that the Court did *not* find that the three girls had *not* been sexually
abused.  The Court simply held that it could not find, based solely on the sparse evidence
(continued...)

Unlike CRD, none of these girls had volunteered information about Green, nor had any of their families initiated contact with the police. Instead, the police contacted the parents, the parents spoke to the children, and only then were the children interviewed. The government submitted no evidence about what the police told the parents, no evidence about what the parents may have learned from other sources, no evidence about what the parents told their children, and no evidence about what the children may have been told by their parents, friends, or anyone else before their corner-house interviews (save Deputy Schneider's testimony that he believed that DMF and CJF knew something about the allegations against Green). Thus on the central issue in the sentencing proceeding — whether the children's testimony was reliable, and in particular, whether it was influenced by information that they received from their parents or elsewhere — the government submitted no evidence whatsoever.

This is not to say that the government's proof with respect to Green's abuse of DAB-D, DMF, and CJF failed because it was hearsay. Hearsay is, of course, admissible at a sentencing hearing, to which the normal rules of evidence do not apply. *See* Fed. R. Evid. 1101(d)(3). But there is a difference between the *admissibility* of evidence and the *reliability* of that evidence. Even at a sentencing hearing, hearsay evidence must bear "sufficient indicia of reliability to support its probable accuracy" for a court to rely upon it. U.S. Sentencing Guidelines Manual § 6A1.3. For instance, videotapes of the children's interviews would be hearsay, but would likely bear indicia of reliability, and would allow the Court some basis to independently assess the credibility and reliability of the children's statements. By contrast, Deputy Schneider's

---

[6](...continued)
presented by the government at the April 10 hearing, that it was more likely than not that Green had sexually abused the three girls.

second- or third-hand testimony about those interviews (and third- or fourth-hand testimony about Green's actions) does not bear strong indicia of reliability.

Perhaps more importantly, the government submitted no evidence on issues that are central to assessing the children's testimony. Contrary to the government's suggestion at the sentencing hearing, the Court's finding that the government did not meet its burden of proof should not be taken to mean that the Court believes that the girls "concocted" the allegations against Green. There is no reason to fear that DAB-D, DMF, and CJF conspired to falsely accuse Green of sexual abuse. There is, however, plenty of reason to fear that the girls may have been influenced by information given to them by their parents or by other well-meaning adults.

Perhaps whoever interviewed these girls concluded that their statements were accurate and had not been influenced by prior information, and perhaps the interviewer (or interviewers) had very good reasons for that conclusion. Perhaps the police who observed the interviews and investigated the case reached the same conclusion. And perhaps the Court would agree with that conclusion if it saw videotapes of the interviews, or read the interview transcripts, or heard the testimony (or read the affidavit) of an interviewer or, at least, of a police officer who observed the interviews.

But the Court has no basis to assess the reliability of the testimony on which Green's sentence depends. The Court does not know whether all four girls were interviewed by the same social worker or by different social workers; the Court does not know the identity of any social worker who interviewed the girls; the Court did not hear testimony from any social worker about the interviews; the Court was not given a videotape or a transcript of the interviews; and no report or interview summary written by any social worker was introduced.

-10-

Instead, the Court heard Deputy Schneider's brief summaries of someone *else's* summaries of interviews he did not witness. The Court does not know what questions the girls were asked or exactly what they said about Green, and the Court does not know what conclusions any social worker reached about the accuracy of the girls' statements or the reasons for those conclusions. The Court is similarly in the dark about the police officers (other than Deputy Schneider) who participated in the investigation.

The Court stresses that the government could easily have met its burden without asking any of the girls or any of their parents to testify. That should be obvious from the fact that the Court found that Green *did* abuse CRD, even though neither CRD nor her parents testified. As the Court has already suggested, the government could have submitted copies of the police reports, videotapes of the interviews, or transcripts of the interviews. The government could have called the social worker (or social workers) who conducted the corner-house interviews to testify, or submitted affidavits from her (or them). The government could have called the police officers who talked to the girls or the parents, or submitted affidavits from them. The government did none of this.

The guidelines calculations in the PSR were based on the assumption that the Court would find that all four girls had been abused. Now that the Court has found that only one girl was abused, the guidelines calculations must be changed. It is clear that Green's offense level should not be increased by five levels under § 2G2.2(b)(5); Green did not "engage[] in a *pattern of activity involving the sexual abuse or exploitation of a minor*" by abusing CRD on one occasion. But it is not clear whether Green is entitled to a two-level reduction in his offense

level under § 2G2.2(b).  For that reason, the Court asks the parties to brief the following

questions:

1.      Is Green ineligible for a two-level reduction in his offense level under § 2G2.2(b)

        by virtue of the fact that he sexually abused CRD, even though CRD is not

        depicted in any of the child pornography on which the charge against Green is

        based?

2.      Is Green ineligible for that reduction by virtue of the fact that he possessed a

        partially naked (but not pornographic) photograph of CRD and another such

        photograph of DAB-D?

3.      Is Green ineligible for that reduction because of the *combination* of these two

        facts — that is, because he both (a) sexually abused CRD and (b) possessed

        partially naked pictures of CRD and DAB-D?

The parties are ORDERED to submit memoranda addressing these questions no later

than Friday, May 2.  Those memoranda should not exceed 6,000 words.


Dated:  April 18 , 2008                        s/Patrick J. Schiltz
                                               Patrick J. Schiltz
                                               United States District Judge